The opinion of the court was delivered by
Mabe, J.
The executors of John Bird recovered judgment against Gilbert A. Daigre for $5000, with recognition of their mortgage rights and vendor’s privilege on Mulberry Grove plantation, situate in the par *1008 ish of East Baton Rouge; and in another suit they recovered judgment against Daigre for $20,331 85, with recognition of their mortgage rights on the same property.
The note on which the judgment for $5000 was obtained was secured by a mortgage recorded in October, 1869. The judgment for $20,331 85 was for the aggregate sum represented by four notes of different dates; one for $5700, secured by mortgage recorded in March, 1870; two amounting to $11,811 66, secured by mortgage recorded in June, 1870 ; and one for $2817 19, secured by mortgage recorded in July, 1870.
On these two judgments executions issued on the twenty-second December, 1871, under which the sheriff seized and sold the plantation, with the appurtenances; and the executors purchased the whole for $25,200, which the sheriff applied pro rata to the two writs, as shown by • his return.
Before the day of sale Edward J. Gay & Co. intervened by way of third opposition, and claimed privilege-and preference on a quantity of cane, part of it put up for seed, and part already planted for the crop of 1875, hay, cord wood, and five mules. They claimed a privilege on the mules for $300, the balance of the price, as subrogees of the vendor; and a lien and privilege on the cane, hay, and cord wood, under an act of pledge in conformity to the act number sixty-six, of 1871.
The judgment of the district court, from which Gay & Co. appealed, was in favor of Bird’s executors, and rejected the demand and opposition of Gay & Co.
The mules were purchased by Daigre, for the use of the plantation, on the tenth February, 1871; and he acknowledged, in writing, the balance of $300 to be due. The claim was transferred to Gay & Co. by the vendors on the eleventh December; and the whole was recorded in East Baton Rouge on the twenty-second December. As the law was at that time, and continued to be up to the passage of the act number forty-ñve, of 1877, page fifty-nine, no privilege conferred a preference on the creditor who held it over a creditor who had acquired a mortgage, unless the act or other evidence of the debt was recorded on the day the contract was entered into. R. C. C. article 3271; State ex rel. Prager vs. Recorder of Mortgages, 28 A. 534; Succession of Marc, 29 A. 112.
Manifestly, the contract on which the vendor’s lien and privilege rested was that between Daigre, the purchaser, and Payne, his vendor; and this lien should have been recorded on the day it was entered into, February 10,1871. The vendor could have transferred to Gay & Co. no other right than he himself had, at the date of the transfer, December 11,1871; and the recording on the twenty-second December was wholly without effect, so far as the mortgage creditors were concerned.
*1009 The law under which the right of pledge is claimed is entitled an -act. “to enable planters, farmers, merchants, traders, and others to pledge and pawn cotton, sugar, and other agricultural products to merchants, factors, and others, and to confer a pledge by the transmission of a bill of lading or carrier’s receipt by mail or by the carrier.” Under 'this act a contract of pledge and pawn was made between Gay & Co. ■•and Daigre, on the third July, which was recorded on' the seventh July, 1874 Gay & Go. also made up their account current, beginning with a balance of §6851 56, on the thirty-first July, brought down to twenty-fourth November, with a balance of $8869 23; and another, account, beginning November 24, with this balance, and closing December 21, '1874, with balance, $3382 29 ; in addition to which they claimed balance •of $19,874 59 on mortgage notes held by them. These accounts were recorded on the twenty-second December, 1874; and it is the balance, :§3382 29, for which.they claim the lien and pledge.
The second and third sections of this act are but enlargements of the privilege of the consignee as established by the R. 0. 0. article 3247; •■and it is not necessary to consider them, as there was no shipment or •consignment of the property in question.
The first section of the act provides that, in addition to the privilege now conferred by law, any planter, etc., may pledge or pawn his ••growing crop of cotton, sugar, or other agricultural products for advances in money, goods, and necessary supplies that he may require for the production of the same, by entering into a written agreement to pledge the same, and having the agreement recorded in the office of the recorder of mortgages of .the parish where said cotton, etc., is produced, “which recorded contract shall give and confer on the merchant, ■ etc., a right of pledge upon the said crop, the same as if the said crop had been in the possession of the pledgee.”
The law which gives a privilege for necessary supplies, etc., furnished to any farm or plantation, “ on the crops of the year and the promeeds thereof,” is article 3217 of the R. O. 0., embodying the act number 195, of 1867. Of course this privilege falls under the dominion of the •constitution of 1868, article 123, which requires all privileges to be recorded in order to have effect against third parties, and of the R. O C. article 3274, which required the act granting the privilege or other evidence of the debt to be recorded on the day that the contract was ■entered into in order to confer a preference over creditors who have .-acquired a mortgage. Beard vs. Chappell, 23 A. 694; Bank of America vs. Fortier, 27 A. 245; Adams vs. Adams, 27 A. 275. The recording on -the twenty-second December could not have been on the day the cbn-tract between Gay & Go. and Daigre was entered into; and the recording of an account current for advances running through several months *1010 on the day after the date of the closing of that account is not, in any sense, the recording of the evidence of the debt on the day the contract. under which the advances were made was entered into. Prager vs. Recorder of Mortgages, 28 A. 535.
The right of Gay & Oo. depends upon the agreement of July 8,.. 1874, recorded on the seventh July, not on the day the contract was-entered into. The counsel for Gay & Co. contend that the contract was-a pledge, and although the law requires it to be recorded, it does not. prescribe the time at which it shall be recorded; and that' it takes ■ effect from the date of the recording. This may be true in general;, but it is not true so far as creditors having pre-existing mortgages are-concerned ; and we think that, whenever the law requires a contract to-be recorded, and is silent as to the time within which it must be recorded.,. its effect is limited and controlled by article 3274.
The lessor need not record the right of pledge by which the rest Is-secured to him, because the movables subject to his right are in his possession, that is, they are in his house, on his premises. The law does-not require the consignee who has made advances on the goods «on-signed to him, or to whom a general balance is due for advances, to record his claim, because when the shipment is made, and the goods a rain the possession of the carrier, the carrier is the agent of the consignee ; his possession is the possession of the consignee; and the bill, of lading or the carrier’s receipt, when it has once passed beyond theeontrol of the shipper, the consignor, by being deposited in the mail, or-delivered to the carrier to be transmitted with the goods, vests ikelegal title, the right of possession and control, in the consignee for toe-purposes and subject to the terms and conditions of the consignment;, and the holder of such a title to movable effects has no occasion to pet. upon record the evidence of his right and title.
It suffices to say, with respect to the privilege of the lessor and that: of the consignee, that the law does not require them to be reeoxctecL The act of 1874 distinguishes between the right of a merchant making-advances to a planter under the contract authorized by the first se®ti©»- and that of the consignee to whom the goods have been dispatehed. It. requires, in express terms, that the agreement between the merehaat:. and the planter shall be recorded, while it imposes no such conditioB on-the consignee.
Pledge is the generic term ; that form of pledge by which movables, are put into the possession of the creditor as security for a deM fe. called a pawn ; and where the property pledged is immovable the eon-tract is called antichresis. R. C. C. 3133, 3134, 3135.
An essential requisite of the pawn is that the thing must be actually delivered to and must remain in the possession of the creditor, or of a.. *1011 third person agreed on by the parties. R. O. 0. 3162. The act of 1874 authorizes the pledge or pawn of a growing crop, which can not, until it is gathered, be delivered to the creditor. To supply the want of actual delivery, the act requires that the agreement shall be'recorded in the office of the recorder of mortgages, in the parish in which the crop is produced. The act does not say when it shall .be recorded; and, no doubt, it would be good against creditors acquiring rights and privileges after the recording. But article 3274 declares, in the broadest terms, that no privilege can confer a preference over creditors having acquired a mortgage, unless it be recorded as prescribed by that article. It would require the positive declaration of legislative will to that effect to withdraw the contract authorized by the act of 1874, section one, or any other form of contract creating a privilege which the law requires to be recorded, from the control of article 3274, which is the general law applicable to every species of privilege.
If the right of the lessor and of the consignee need not be recorded, it is not because they are pledgees ; but because the law-making power has not seen fit to impose upon them the condition of recording which the act of 1874, section one, requires of the creditor for advances to a farmer or planter.
The counsel for Gay & Co. argue that, by the certificate of the recorder of mortgages, it appears that the mortgage debt of Bird’s executors, with interest up to the date of the sale, amounted only to $17,872 28; and, as the price of the adjudication was $25,20.0, there remains a sum sufficient to pay the debt of Gay & Go., $3382 29, with interest. The certificate was that which was annexed to the sheriff’s return; and, as copied in the transcript, it omits the mortgage for $11,814 66, recorded in June, 1870, as stated at the beginning of this opinion. The solemn judgment of the court recognizing this and the other mortgages, all of which appear in the record, with the certificate of the recorder of mortgages on each of them, showing the dates at which they were respectively recorded, can not be affected by the accidental omission in the certificate of the recorder of mortgages, prepared for the sheriff, and which was offered in evidence only incidentally, as part of the sheriff’s return. This omission may have been the fault of the recorder, or of the- copyist who prepared the transcript; but with the other evidence in the record, showing the precise amount of the mortgage debt and the dates of recording, it is wholly immaterial.
Edward J. Gay & Go. were not entitled to any right or privilege on the mules, or the cane, or the hay, or the cord wood, in preference to the mortgage creditors; and the district judge did not err in rejecting their demand and opposition.
The judgment appealed from is therefore affirmed with costs.